# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| ATUL SINGH DEORA, *et al.*,<br>Plaintiffs,<br>v.<br>NANTHEALTH, INC., *et al.*,<br>Defendants. | CV 17-01825 TJH (MRWx)<br><br>**Order** |

The Court has considered Defendants' motion to dismiss the Amended Consolidated Class Action Complaint ["Complaint"], together with the moving and opposing papers.

The following facts are alleged in the Complaint. Defendant NantHealth, Inc. ["NantHealth"] sells software solutions that improve healthcare data management and provides services that make diagnosis and treatment of patients more precise. NantHealth's main product is GPS Cancer, a test that measures a patient's genome to predict the patient's response to particular cancer treatments. NantHealth is one of many entities controlled by Defendant Patrick Soon-Shiong. Soon-Shiong and Defendant Paul Holt are NantHealth's Chief Executive Officer ["CEO"] and Chief

Financial Officer, respectively [collectively, "Officer Defendants"]. As Chairman of the Board, Soon-Shiong, also, serves on NantHealth's Board of Directors, along with Defendants Michael S. Sitrick, Kirk K. Calhoun, Mark Burnett, Edward Miller, and Michael Blaszyk [collectively, "Director Defendants"].

In September, 2014, Soon-Shiong entered into a Memorandum of Understanding ["MOU"] with the University of Utah ["the University"]. Under the MOU, Soon-Shiong, via three of his non-profits, offered to donate $12,000,000.00 to the University if the University retained one or more third parties to perform $10,000,000.00 worth of research services for the University's genome research project. Subsequently, in his capacity as the CEO of his nonprofits, Soon-Shiong executed various agreements, effectuating the $12,000,000.00 donation and setting forth the guidelines for how the donation could be used [collectively, "the Agreements"]. The Agreements, also, set forth the criteria that potential research providers had to meet as a condition precedent to being selected by the University. Because the criteria was so selective, NantHealth was the only third party research organization that qualified. Indeed, NantHealth was the only researcher retained by the University.

On May 6, 2016, NantHealth filed with the Securities and Exchange Commission registration statements and a tentative prospectus for an Initial Public Offering ["IPO"] at $14.00 per share. On June 1, 2016, NantHealth filed the finalized prospectus. The registration statements and finalized prospectus were NantHealth's offering materials [collectively, "the Offering Materials"] for its IPO. The registration statement was signed by the Officer Defendants and the Director Defendants. The Offering Materials emphasized the University's decision to pay NantHealth $10,000,000.00 for research services. The Offering Materials acknowledged that Soon-Shiong had significant control over the donor-nonprofits, but stated that the University was not contractually or otherwise obligated to select NantHealth as the research provider. Further, the Offering Materials stated that the nonprofits provided only "partial" funding for NantHealth's research services at the University.

On July 25, 2016, NantHealth issued a press release announcing that it had been chosen to conduct research for the University's genome project. The press release did not include any information regarding the nonprofits' role in the partnership, the MOU, or the Agreements.

On August 9, 2016, during an investor conference call, NantHealth officers acknowledged the small number of completed GPS Cancer tests in the second quarter, but noted that orders were expected to "ramp up" in the third quarter. On November 7, 2016, NantHealth issued a press release announcing that it had received 524 GPS Cancer orders in its third quarter. During a November 7, 2016, investor conference call, NantHealth revealed that 180 of the 524 orders came from the University. On November 8, 2016, NantHealth's stock price fell from $11.17 to $10.09.

Various articles questioned the propriety of Soon-Shiong's donation to the University and the University's decision to choose NantHealth as its research provider. One article, also, alleged that NantHealth lied about the University's 180 GPS Cancer orders. On March 6, 2017, the Los Angeles Times printed Soon-Shiong's response to allegations that the University's orders were for NantHealth products other than GPS Cancer tests. In his response, Soon-Shiong equated the tests the University ordered to GPS Cancer tests because the University's orders were being processed through the same methods and machines as the GPS Cancer tests. Also on March 6, 2017, NantHealth's stock price fell from $7.17 to $5.50. On March 7, 2017, during another investor conference call, NantHealth representatives re-confirmed that 524 GPS Cancer tests were ordered or performed in the third quarter.

From NantHealth's IPO until May 1, 2017, its stock price steadily declined from $14.00 to $2.98.

On June 26, 2017, Plaintiffs filed this putative class action on behalf of purchasers of (1) NantHealth's IPO and (2) NantHealth stocks between the IPO and May 1, 2017. Plaintiffs alleged that the Officer and Director Defendants negligently or innocently made misrepresentations or omissions of material fact in NantHealth's

IPO, thereby, violating three sections of the Securities Act of 1933, 15 U.S.C. § 77k, *et seq*. ["Securities Act"]: (1) Section 11, 15 U.S.C. § 77k; (2) Section 12(a)(2), 15 U.S.C. § 77l(a)(2); and (3) Section 15, 15 U.S.C. § 77o. Additionally, Plaintiffs alleged that the Officer Defendants fraudulently made misrepresentations or omissions of material fact in various communications to Plaintiffs after the IPO, in violation of § 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j, *et seq*. ["Exchange Act"], and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

All Defendants, now, move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

While a complaint need not include detailed factual allegations for each element of each claim, it must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Where fraud is alleged, the complaint must state with particularity the circumstances constituting fraud. *See* Fed. R. Civ. P. 9(b). When considering a motion to dismiss under Rule 12(b)(6), the Court will accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**§ 10(b) and Rule 10b-5 Claim against NantHealth and Soon-Shiong**

To state a claim for a violation of § 10(b) and Rule 10b-5 of the Exchange Act, Plaintiffs must allege: (1) A material misrepresentation or omission of fact; (2) Scienter; (3) A connection between the misrepresentation or omission and the purchase or sale of a security; (4) Reliance upon the misrepresentation or omission; (5) Economic loss; and (6) Loss causation. *See Scheuneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016). More specifically, Plaintiffs must allege the misrepresentation element with particularity to satisfy Rule 9(b), and the scienter element with sufficient particularity to satisfy the Private Securities Litigation Reform Act of 1995 ["the PSLRA"]. *See Scheuneman*, 840 F.3d at 704.

To satisfy Rule 9(b)'s heightened pleading requirement for a securities fraud

claim, Plaintiffs must identify the who, what, when, where, and how of the misconduct alleged, as well as what was false or misleading about the allegedly fraudulent statement, and why it was false. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Here, the foundation of Plaintiffs' § 10(b) and Rule 10b-5 claim is built upon misrepresentations and omissions made by NantHealth and Soon-Shiong in various press releases, quarterly reports, and investor calls, namely, that Soon-Shiong's nonprofits provided only partial funding to the University, the University was not contractually or otherwise obligated to use NantHealth, and there were 524 GPS Cancer tests ordered in the third quarter. The parties do not dispute that the content of these statements was material information. Further, Plaintiffs alleged that NantHealth and Soon-Shiong omitted material information regarding the nature of NantHealth's relationship with the University. Once NantHealth chose to tout positive information regarding its relationship to the University, it was bound to do so in a manner that would not mislead investors; it had an obligation to disclose adverse information that cut against the positive information. *See Schueneman*, 840 F.3d at 706. Plaintiffs sufficiently alleged that NanthHealth failed to disclose that adverse information.

Accordingly, Plaintiffs § 10(b) and Rule 10b-5 claim satisfies Rule 9(b). *See Scheuneman*, 840 F.3d at 704.

Pursuant to the PSLRA, Plaintiffs must allege, with particularity, facts giving rise to a strong inference that NantHealth and Soon-Shiong, *inter alia*, made the false or misleading statements or omitted information with the requisite scienter – intentionally, knowingly, or with deliberate recklessness. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). The Court must consider the complaint holistically, to determine whether the totality of Plaintiffs' allegations lead to a strong inference of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

Here, Soon-Shiong was, allegedly, intimately involved with the nonprofits, the MOU, the Agreements, and was the catalyst of the relationship between NantHealth

and the University. Due to Soon-Shiong's role in forming the relationship between the University and NantHealth, he knew, or had reason to know, of the potential constraints and incentives placed on the University to select NantHealth as its research provider. However, Soon-Shiong, allegedly, made statements contrary to the true nature of the relationship between the University and NantHealth, or at the very least, omitted material information regarding the true nature of the relationship. Additionally, Soon-Shiong, allegedly, knew that the University's test orders were not GPS Cancer test orders, yet he still represented that the University's orders were GPS Cancer tests so as to artificially inflate NantHealth's quarterly numbers.

Accordingly, assessing the allegations holistically, Plaintiffs have alleged sufficient facts to raise a strong inference that Soon-Shiong intentionally, knowingly, or with deliberate recklessness, misrepresented, or omitted material facts, regarding the relationship between the University and NantHealth, and NantHealth's total orders of GPS Cancer. *See Tellabs*, 551 U.S. at 321. Thus, Plaintiffs § 10(b) and Rule 10b-5 claim satisfies the PSLRA. *See Scheuneman*, 840 F.3d at 704.

Further, Plaintiffs have sufficiently alleged that NantHealth's and Soon-Shiong's material misrepresentations or omissions caused Plaintiffs to purchase or acquire NantHealth's common stock. *See Scheuneman*, 840 F.3d at 704. Furthermore, Plaintiffs have sufficiently alleged that the misrepresentations or omissions were the proximate cause of their injuries, namely, the decline in stock price. *See In re Daou Systems*, 411 F.3d 1006, 1025 (9th Cir. 2005).

Accordingly, Plaintiffs have adequately alleged that NantHealth and Soon-Shiong violated Section 10(b) and Rule 10b-5 of the Exchange Act.

**§ 10(b) and Rule 10b-5 Claim against Holt**

The only issue regarding Plaintiffs' § 10(b) and Rule 10b-5 claim against Holt is whether Plaintiffs sufficiently pled that Holt acted with the requisite scienter. To attribute the requisite scienter to Holt, Plaintiffs primarily rely on the core operations

theory – that it is reasonable to infer that high ranking corporate officers have knowledge of the core operations of their companies. *See S. Ferry Lp, No. 2 v. Killinger*, 542 F.3d 776, 782-783 (9th Cir. 2008). Plaintiffs argued that because the University's payment of $10,000,000.00 to NantHealth was such a large amount for a fledgling corporation that Holt had to have known about the details of the relationship between NantHealth and the University.

However, "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter." *S.Ferry*, 542 F.3d at 784-785. Plaintiffs alleged that Holt knew of the information related to the fraud only because he was controlled by Soon-Shiong, by virtue of Soon-Shiong's higher ranking position in NantHealth, rather than because Soon-Shiong told Holt any information that may have given Holt notice of fraudulent activity. The allegation that Soon-Shiong indirectly controlled Holt does not equate to Holt having knowledge of the fraud. *See S. Ferry*, 542 F.3d at 784.

Accordingly, Plaintiffs failed to allege facts that rise to a strong inference that Holt acted with the requisite scienter. *See Tellabs*, 551 U.S. at 321.

**§ 20(a) Claim against the Officer Defendants**

Plaintiffs alleged that the Officer Defendants violated § 20(a) of the Exchange Act, a derivative claim that imposes liability on someone who controls any person liable for a primary violation of the Exchange Act. To state a claim for a § 20(a) violation, Plaintiffs must allege: (1) A primary violation of federal securities laws; and (2) That the Officer Defendants exercised actual power or control over the primary violator. *See generally, Webb v. Solarcity Corp.*, 2018 WL 1189422, *11 (9th Cir. 2018). As discussed, Plaintiffs sufficiently alleged that NantHealth violated § 10(b) and Rule 10b-5. Further, Plaintiffs sufficiently alleged that the Officer Defendants exercised actual

power or control over NantHealth by virtue of being high level officers in the corporation. *See generally, In re Daou Systems*, 411 F.3d at 1030. Accordingly, Plaintiffs have adequately alleged that the Officer Defendants violated § 20(a) of the Exchange Act. *See In re Daou Systems*, 411 F.3d at 1030.

**Securities Act Claims**

The parties dispute whether the heightened pleading requirements of Rule 9 and the PSLRA apply to Plaintiffs' Securities Act claims. Defendants contend that because the Securities Act claims are based on the same, or similar, statements and omissions as the Exchange Act claims, the Securities Act claims are equally grounded in fraud and must be plead pursuant to the heightened pleadings standards. Further, Defendants contend that Plaintiffs' general disclaimer of fraud with regard to their Securities Act claims is insufficient to avoid Rule 9(b) and the PSLRA.

However, Plaintiffs' Securities Act claims are based on misrepresentations or omissions in the Offering Materials, while their Exchange Act claims are based on misrepresentations or omissions made after the IPO. While the statements may have relayed the same information, the misrepresentations or omissions made in the Offering Materials are a separate instance of speech from the misrepresentations or omissions made after the IPO. Moreover, Plaintiffs are clear throughout the Complaint that they alleged fraud only as to misrepresentations or omissions made after the IPO. *See Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 684 (9th Cir. 2005). Because Plaintiffs do not base their Securities Act claims on fraudulent conduct, those claims do not have to satisfy the heightened pleading requirements of Rule 9(b) or the PSLRA. *See In re Daou Systems*, 411 F.3d at 1028 (9th Cir. 2005).

Plaintiffs alleged that NantHealth, the Officer Defendants, and the Director Defendants violated § 11 of the Securities Act. To state a claim for a violation of § 11, Plaintiffs must allege that: (1) The registration statement contained an omission or misrepresentation; and (2) The omission or misrepresentation was material. *See*

*Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 683 (9th Cir. 2005). As discussed above, the Offering Materials contained material misrepresentations or omissions. *See Knollenberg*, 152 Fed. Appx. at 683. Accordingly, Plaintiffs adequately pled its § 11 claim against NantHealth, the Officer Defendants, and the Director Defendants.

Plaintiffs, also, alleged that NantHealth violated § 12(a)(2) of the Securities Act. § 12(a)(2) imposes liability on a person who offers or sells securities by means of a prospectus that contains material misrepresentations or omissions. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 535 (9th Cir. 1989). As a threshold matter, Plaintiffs must allege that NantHealth was a statutory seller – a person that passes title of the security to the purchaser or solicits the sale of the security. *Pinter v. Dahl* 486 U.S. 622, 646-648 (1988). NantHealth argues that it is not a statutory seller because it used an underwriter during the IPO. However, the process that NantHealth and its underwriters may or may not have engaged in while selling NantHealth's securities during the IPO exceeds the scope of this motion to dismiss.

Plaintiffs alleged that the Officer Defendants violated § 15 of the Securities Act. To state a claim for a violation of § 15, Plaintiffs must allege that: (1) The Officer Defendants had the power to influence or control the primary violator; and (2) The Officer Defendants actively used this influence or control. *See Knollenberg*,152 Fed. Appx. at 684-685. High level officers, such as CEOs and chairmen of the board, by virtue of their positions, have the power to influence or control the corporation. *Knollenberg*,152 Fed. Appx. at 684-685. Further, the high level officers actively use this influence or control if, *inter alia*, they signed the registration statements. *Knollenberg*,152 Fed. Appx. at 684-685. Here, the Complaint alleged that the Officer Defendants are high level officers, that they signed the registration statements, and that they were responsible for the registration statements' content and dissemination. Thus, Plaintiffs adequately alleged that the Officer Defendants violated § 15 of the Securities Act. *See Knollenberg*, 152 Fed. Appx. at 684-685.

Accordingly,

**It is Ordered** that the motion to dismiss be, and hereby is, **Granted**, without prejudice, as to Plaintiffs' § 10(b) and Rule 10b-5 Exchange Act claim against Defendant Paul Holt.

**It is further Ordered** that the motion to dismiss be, and hereby is, **Denied** as to all other claims and Defendants.

Date: March 27, 2018

Terry J. Hatter, Jr.

**Terry J. Hatter, Jr.**
**Senior United States District Judge**